### EDISON ELECTRIC LIGHT CO. v. KAELBER.

(Circuit Court, N. D. New York. November 12, 1896.)

PATENTS—INFRINGEMENT—SUIT AGAINST AGENT.

One K. was sued for infringement, as agent of a nonresident corporation. The theory of the bill was that a contract for the installation of an electric plant within the jurisdiction had been awarded to such corporation, which, if performed according to specifications, would necessarily involve infringement. Infringement was explicitly denied, on oath, in the answer, and there was no proof that the plant had been installed. The experts on either side were equally positive in asserting and denying that the performance of the contract would involve infringement. The only proof to connect defendant with the transaction was the statement of a witness that the contract "was awarded to" said corporation "through its agent, Mr. K." *Held*, that there was no sufficient proof of infringement, and that, in any event, defendant was not shown to be connected therewith.

This was a suit in equity by the Edison Electric Light Company against J. George Kaelber for alleged infringement of a patent.

Frederic H. Betts and L. F. H. Betts, for complainant.
Charles A. Brown, for defendant.

COXE, District Judge. The defendant is sued as agent of the Western Electric Company for the infringement of letters patent, No. 281,576, granted to Luther Stieringer, July 17, 1883, for an improvement in safety catches for electric light circuits. The defendant insists at the outset that no infringement is shown. The issue of infringement, as made up by the pleadings, is as follows: The bill alleges that the defendant, as agent of the Western Electric Company, the said company and the Buffalo State Hospital, confederating together, have contracted to erect, sell and use an electric plant involving the use of the safety catch of the patent, "and have infringed the said letters patent as aforesaid, and are now infringing the same * * * by erecting, selling and using and causing to be erected, sold and used as aforesaid * * * the improvements covered by said letters patent." The bill alleges further that by reason of the said infringement great injury will result to the complainant and great gains to the defendant. In short, the bill charges that the defendant has made a contract which involves infringement, that he has actually infringed, is infringing, and has received great gains and profits by reason thereof. All this on information and belief. The answer, which is on oath, contains a positive denial of the charge of infringement in language as clear and explicit as it is possible to employ. What is the proof? In September, 1893, the managers of the state hos-

pital at Buffalo advertised for bids for the installation of an electric plant at that institution pursuant to specifications which were issued to bidders. The complainant and the Western Electric Company both competed for the work and on or about the 2d of October, 1893, it "was awarded to the Western Electric Company, through its agent Mr. Kaelber." Thereupon the complainant wrote to the Western Electric Company that the installation of the Buffalo plant would infringe a fundamental patent owned by it covering the so-called feeder system. The patent had at that time been upheld by the courts, but was subsequently overthrown. No allusion was made in this letter to the patent now in controversy. The paragraphs of the Buffalo specifications, of which it is sought to predicate infringement, are as follows:

"There is to be no woodwork about the switch board. All switches shall be built upon the board, and not upon separate bases bolted to it. As far as practicable, all instruments, terminals, fuse blocks and other apparatus are to be attached to the board in the same manner. Cutouts shall be entirely of porcelain and brass with porcelain covers. When in cabinets they may have mica covers. All fuses carrying over ten amperes shall have brass terminals stamped with the capacity. Rosettes used with mouldings shall be mounted on square porcelain bases and shall be fused. All pendants shall be hung from rosettes. All canopy cutouts shall be of porcelain double poled and fastened to wall or fixture. All work shall be done in accordance with the rules and regulations of the Buffalo Board of Fire Underwriters."

The complainant's expert witness testifies, in substance, that it would be impossible to perform a contract embodying these specifications without infringing the Stieringer patent. The defendant's expert, on the contrary, expresses an equally positive opinion that the specifications can be carried out without infringing the patent, and explains how this can be done. He also testifies that devices embodying all the combinations of elements of the claims in controversy "have been for sale in the market by the complainant or its licensee without any mark or notice that they are manufactured under any patent. This is so to my personal knowledge." I do not understand that this proposition is denied. The complainant's manager, Mr. Hughes, testifies that there was no arrangement between the complainant and Kaelber whereby the latter should procure articles from the former to be used at the Buffalo Hospital. This is very far from a denial that the particular articles in dispute could be purchased in the open market, and especially so in view of Mr. Hughes's further testimony that the complainant sells the Stieringer safety catches in the general market "subject to existing contracts." He is asked, "Is it possible that, if the patent had been installed, any articles which might come within the description of patent 281,576 are those manufactured by the General Electric Company?" Answer. "I am not prepared to say that it is impossible." There is no evidence that a contract was made or that any plant was installed at the Buffalo Hospital. In fact the entire case against the defendant rests upon the aforesaid statement of Mr. Hughes that the contract "was awarded to the Western Electric Company, through

its agent Mr. Kaelber." Omit the last five words and there is absolutely nothing connecting Kaelber with the transaction. If this loose statement is sufficient to establish agency at all what was the character of the agency? Was he a general agent or was he a special agent only to represent the Western Company before the hospital board? For aught that appears he may have represented the Western Company as Mr. Crowell represented the complainant, or he may have been simply an attorney at law to hand in the company's bid and receive the award in case the bid was accepted. It is manifest that there can be no well-grounded apprehension of infringement from such an agent. A quia timet action will not lie unless there is something to fear. There is not a particle of evidence to show that Kaelber ever infringed or threatened or agreed to infringe, or assisted any one else to infringe, or that he was in a position where he could do, or would be likely to do, any of these things. It is impossible to inculpate this defendant except by a series of guesses which equity will not tolerate. Kaelber has said nothing and done nothing blamable. When the hospital board concluded to accept the Western Company's bid they communicated the fact to him. This was all. If, upon such proof, a party can be held as a wrongdoer, subjected to an injunction and an accounting and compelled to pay a bill of costs, few will be safe. In any view, the real defendant is the Western Electric Company. The real injury, if any, has been inflicted by it. Viewed in its most favorable light for the complainant Kaelber's action placed the Western Company in a position where it might infringe. The moment the contract was made, assuming that it compelled infringement, there was reason to fear that company but not the defendant. He has made no threat. An injunction against him would not have stopped the work. To make him pay for profits which he has never received would be an injustice. But in order to test the question still further let it be assumed that the Western Electric Company, and not Kaelber, is the defendant. How then does the case stand? There is an allegation of infringement on information and belief and a positive denial under oath. There is no proof of actual infringement. There is proof that a contract was awarded the company which if carried out pursuant to the specifications may involve infringement and may not. There is, as before stated, no proof that a contract was actually entered into or a plant installed. There is proof that the infringing devices were sold in the open market by the complainant, or its licensees. Non constat, the Western Company may have had a quantity of these on hand when it made the bid. Remembering that the burden of proving infringement is upon the complainant, and that even in a quia timet suit there must be "well-grounded proof of an apprehended intention to violate the patent right," it is thought that there is a failure to prove a case against the defendant.

It would seem that the complainant may have overlooked the fact that Kaelber is the sole defendant, for in the brief it is argued that enough has been shown to indicate that there was a fair prob-

ability that the safety catches of the patent would be installed at Buffalo. The brief proceeds: "If the defendant did not actually install such apparatus as is described and illustrated in the patent in suit, the burden was upon *it* to have proved it." There can be no pretense upon this proof that the burden was upon Kaelber to prove this for the reason that the hypothesis upon which the proposition is founded fails wholly as to him. The Western Electric Company is not a party. It evidently declined the invitation of the bill to "submit itself to come within the jurisdiction of this court." As to the only defendant who is before the court the complainant's difficulty is not with the law, but with the facts. The rule of law is plain and simple, but the proof does not bring the defendant within the rule. Too much is left to uncertainty and speculation. Should the court decree for the complainant it could never rid itself of the painful doubt that it may have done an injustice to an absolutely blameless man. The bill is dismissed.