WERK et al. v. F. T. PARKER CO.

(District Court, E. D. Pennsylvania.    March 8, 1915.)

No. 1277.

PATENTS ☞328—INFRINGEMENT—OIL PRESS MATS.

The Werk patents, No. 758,574, claim 1, and 758,575, for oil press mats, described in the claims as made of animal hair, *held*, in view of the prior art, not infringed by mats made of human hair.

In Equity.   Suit by Robert F. Werk and Robert F. Werk and Mrs. John Lewis Kennedy, copartners as Robert F. Werk & Co., against the F. T. Parker Company.   On final hearing.   Decree for defendant.

E. Hayward Fairbanks, of Philadelphia, Pa., and T. Hart Anderson, of New York City, for plaintiffs.

Weaver & Drake, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   The plaintiff's complaint is that the defendant has trespassed upon the proprietary rights granted to Robert F. Werk by letters patent Nos. 758,574 and 758,575 on April 26, 1904, which have passed to them.   The answer is a denial of any act of infringement, and a general denial of the validity of the patent.   The issue of infringement is still further narrowed to a question of equivalents.

The patents relate to improvements in oil press mats.   The principal use of these mats is in the extraction of cotton seed oil.   After the seeds are brought to a condition in which the oil can be most readily expressed, the prepared material is placed in the form of a cake upon the mat, the ends of which are then folded over and upon the sides of the cake.   A heavy pressure is applied, and the oil exuded or strained through the mat.   So far as the evidence in this case discloses, the mats known to the prior art were made of camel's hair. From the results of the use of camel's hair mats sprang a demand for something better.   The camel's hair of which the mats were made is a mixture of hair and wool.   These words, whether accurately or not, are used in the differential sense that wool is of finer fiber, has serrated edges and a crinkled form, so that it will readily mat itself to make a felt.   Relatively speaking, hair will not do this, or at least it is felted less readily.   The camel's hair mats formerly in use, having this matting or felting characteristic, became, after a short use, almost impervious, with a resultant loss of much of the oil product. The parts of the mat which were folded over the sides of the cake, after the mat had been used for a short time, became weakened and would part.   Water is used in the process of extracting the oil, and when used with camel's hair mats, if not applied with care, would bring about a further resultant loss.   The prior state of the art of mat making involved the application of the weaver's art.   We have, then, as the state of the prior art, the use of a mat made of camel's hair and woven in the old and commonly known methods of the weaver.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The patentee in this case claims the merit of having discovered that he could, by using a different material from that which was known in the art of mat making, and by having the fibers or threads of this material woven in the usual way of warp and weft threads, but having the weft threads composed of soft and pliable fiber and less in number than the warp threads, and in addition having the weft threads thicker than the warp threads, overcome the deficiencies of the mats then in use. The results, according to the evidence, justified his expectations. The mat which he produced was an improvement upon the old mat in several respects or features. One was that it was more efficient, in that with its use all the oil could be extracted from the material, and thus loss saved. Another was that what might be called the longitudinal strength of the mat was increased, with the resultant saving due to the mat lasting for a much longer time than the old mat. The third was that the improved mat could be produced at a much less cost than the old camel's hair mat. These results were accomplished by making the mat entirely of long animal hair, the fibers or threads of which, as used in the warp of the woven cloth, exceeded in number those used in the weft, and the weft threads being made exclusively of soft, pliable hair, or by having the mat woven of fibers or threads of long, but soft and pliable, hair obtained from the tails and manes of animals, and so selected that the weft threads would be thicker than the warp threads, and so woven, that the warp threads would exceed in number the weft threads. As would be expected, the grand result was, according to the evidence, that the new mat superseded the old.

The case for the plaintiff rests upon claim No. 1 of the first patent and the one claim of the second patent. Each of these claims, it will be noticed, call for a mat made of "long animal hair." The mat as manufactured and sold by the defendant answers to all the features of the plaintiffs' patent, except that the material there used is human hair.

It is urged on behalf of the plaintiffs that the language of the claims is to be considered in the light of the prior state of the art and of the application of the inventor's discovered improvements to the old mats, and that the merit of the invention or discovery is to be found in the fact that the use of long fibers or threads of hair which are free from intermixture of wool and in the weaving of these in the manner described, and that the patentability of the discovery lies in the happy combination of certain known elements borrowed from the weaver's art producing the improved results above outlined.

The principle is urged that the inventor is not confined to the one source of material mentioned in his claim, if the material is used in the same combination, for the same purpose, and is productive of the same results, although the material used may come from some other source of supply. The argument in substance is that the words as used are merely descriptive, and the special material or source of supply named is also merely descriptive or preferential, and that the claim covers anything and everything which is the equivalent of the material and methods of its employment mentioned in the claims.

The argument for the defendant proceeds upon the proposition of fact that the term "animal hair" has a special, technical, and limited trade significance, in the sense that it is used as exclusive, among other things, of human hair, and the inventor having expressly limited his claim to a mat, the material of whose manufacture was animal hair, cannot be permitted to so extend his claim as to include human hair, which in his application and in his claims he had expressly and intentionally excluded. The further claim is made that there is no patentable novelty in the mat which the defendant claims to have invented.

It will thus be seen that the question of infringement is to be determined in accordance with the doctrine of equivalents. We start off with the idea of the aim to be accomplished and the means by the use of which the result is attained. The end in view may be the same, and yet the conception of the means by which the result is to be brought about may be entirely different, and the essential idea independent and wholly different, in the one case and in the other. What may be termed the general idea of the means employed may be the same, but may be developed in a wholly independent and different way. On the other hand, the whole difference may be merely an immaterial variation in the form of the embodiment of the idea. In the first of the instances given, the two inventions may exist side by side without either overlapping the other. In the second, one of the inventions would be an improvement on the other. In the last instance, the succeeding method would be a mere copy of the other, and without any inventive merit whatever. Tested by these principles, we have here an identity of results.

The question is reduced, therefore, to the narrow limits of a comparison of the means employed to reach the end desired. This comparison discloses a further identity of means, except only in the variation of the use of human hair as distinguished from the hair of animals. The substituted material produces the same result. It is used as a means operating in precisely the same way. There is, therefore, an identity both with respect to the final purpose and the means of accomplishing the desired result. If a claim of the plaintiff, broad enough to cover any means of serving this purpose, can be supported, a finding of infringement in this sense would follow, notwithstanding the fact, which we find for the defendant, that the appellation "animal hair" does not, in its technical, trade, or commercial signification, include human hair.

This leaves in the case only the question of the validity of the patent, and this turns on whether the claimed invention possesses patentable novelty and merit. That the plaintiffs' make of mats possessed commercial novelty and value is beyond denial. The question, broadly stated, is whether the designing of the plaintiffs' mat called into exercise the inventive faculty or merely the skill of the fabricator. The design embraces two meritorious features. One is in making use of the differential qualities of animal wool and animal hair with respect to their felting characteristics. The designer showed judgment in his choice of material. The other is in the use made of

the material when selected—the exercise of judgment in the application of the principles of the weaver's art, as well as a display of the skill of the weaver.

Let us first clear the decks in order to cope with this problem. The oath of the applicant and the grant of letters patent make out in its evidential aspect a prima facie case of patentable novelty. This must be overcome by proofs. The weight of the evidence is that, with respect to the use made of the material of which the mat is composed, the designer has simply made a draft upon the known resources of the weaver's art. The use of woof and web, and all possible variations in the length and in the mode of applying the fibers or threads in the process of weaving, are old. The evidence for the defendant to be directed to the other features of the claimed invention is very meager. It may, indeed, be said to be absent.

At the trial of the case we were very strongly impressed with the thought that the defendant had failed to meet the plaintiffs' prima facie case, and that in consequence the plaintiffs must prevail. This must still be so, unless this patent on its face discloses want of patentable novelty in the features not met by the evidence for the defendant. The test of the plaintiffs' case is therefore the demurrer test. Put into a nutshell, the question is this: Is invention involved in making use of a known quality inherent in some materials? There may be, of course, in the apparatus or method employed; but the question relates to the mere use of the material. The substitution of one material for another, by bringing in a new quality, may result in gain. It did so here.

We feel the strength of the appeal which lies in the fact that the claims of the plaintiffs are based upon at least undoubted commercial novelty and utility. Is there, however, invention in the sense of patentable novelty? There is the highest authority for the proposition that there is no rule of law that the substitution of one material for another is not patentable. It is a hornbook principle that there is no invention in substituting better material for that formerly in use. The test has been stated to be whether the change of material results in a new function. Patent claims have also been upheld when supported by a gain in efficiency or cost of manufacture. To allow a monopoly of a quality in matter because of its discovery would have far-reaching consequences of tremendous importance. The broad principle has been discussed in well-known cases. The claim here goes further than in Celluloid Manufacturing Co. v. Chemical Co. (C. C.) 36 Fed. 110, and King v. Anderson (C. C.) 90 Fed. 500, in which patents were upheld because better and cheaper results were produced.

Applied to the facts in this case, the principle involved has this bearing: Mats were in use which were made of camel's hair. Defects developed. A cause for this was found in the fact that camel's hair readily felts. It is known that hair felts less readily than wool. The patentee makes a mat woven of hair obtained from the manes and tails of horses, and substitutes it for camel's hair. A better and cheaper mat is produced. A mat so made is therefore claimed to be patentable. Such claim might be supported by the distinction that,

although a natural force, power, or principle discovered to be possessed by any material cannot be patented, yet it may form a constituent element of a process of manufacture or of a composition of matter existing as a product which may be patented. The defendant discovers that a mat made of another material, such as human hair, will produce the same result. It at once becomes apparent that the plaintiffs, to exclude the defendant and others from the use of the second mat, must make good their claim to alone make use of this nonfelting property of hair in the makeup of mats. They can only do so on the basis of original discovery. The faculty of invention is not otherwise called into exercise. If the principle is known and its application in use, the only field left open is one for the exercise of judgment in the selection of material in which the quality called for resides in the greatest abundance. This displays the skill of the fabricator not invention.

The conclusion is that, in weaving mats made of human hair, the defendant has not encroached upon any rights of the plaintiffs, and a decree dismissing the bill, with costs, may be submitted.