## GEORGE FROST CO. et al. v. COHN et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1902.)

No. 34.

**1. PATENTS—PATENTABLE NOVELTY—SUBSTITUTION OF MATERIALS.**

Whether the substitution of one known material for another in the construction of an article is patentable depends upon whether what was done involved the exercise of inventive faculty as distinguished from the ordinary skill of the calling, and when the substitution has accomplished a result which those skilled in the art had long and vainly sought to effect the evidence that it involved something beyond the skill of the calling is so persuasive that it generally resolves the inquiry in favor of patentable novelty.

**2. SAME—HOSE SUPPORTER.**

The Gorton patent, No. 552,470, for a hose supporter, claim 1, the essential feature of which is the substitution in the clasp of a well-known form of supporter of a button made of rubber or similar material having a fibrous, yielding, or elastic surface for the metal button of the prior art, was not anticipated, and discloses patentable novelty, in view of the marked superiority of the article as so constructed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 112 Fed. 1009.

J. Edgar Bull and Edmund Wetmore, for appellants.

A. D. Salinger and Frederick P. Fish, for appellees.

Before WALLACE and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The assignments of error challenge the patentable novelty of the hose supporter which is the subject of the patent to Gorton, No. 552,470, granted December 31, 1895.

The feature of novelty resides only in the material of which the button is composed, as supporters substantially similar to the one patented by Gorton were old, except that instead of having a button with a rubber shank or wholly of rubber the button and shank were of metal. The substitution of the rubber button was an improve-

ment of decided value. Supporters like that shown and described in the patent consist of two members,—one a plate with a button attached thereto, and the other a pear-shaped loop. Each member is attached to a strip of webbing, the loop member being usually mounted on a strip of elastic webbing. In using the device the fabric of the stocking is placed over the button, and with the button is then inserted through the large end of the pear-shaped slot, and the button is then drawn or forced into the contracted portion of the slot, so that the side walls of this contracted portion operate to hold the stocking firmly against the shank. With the metal button of the old device the fabric is gripped or clamped between two metal surfaces, the outer surface of the stud shank and the inner surface of the surrounding portion of the loop. If these metal surfaces are made smooth and round the fabric will slip between them, and even under a moderate strain will soon work its way free from the supporter. If, in order to overcome this objection, the metallic surfaces are roughened or sharpened to take a better hold of the fabric, they are likely to cut or wear the fabric away so that it will tear out or break away from the fastening, and may be badly damaged. Furthermore, the old fastener would not accommodate itself to different thicknesses of fabric, so that if the loop were fitted close to the shank of the stud to work well with thin fabrics it would not work properly with thick fabrics and was liable to injure them; and, on the other hand, if sufficient space were left to work better with thick fabrics, thinner fabrics would scarcely be held at all. Numerous patents had been obtained for modifications in the several devices composing the supporter intended to afford a clasp that would hold the fabric firmly without slipping and would not abrade under strain, and would be adapted for fabrics of different thicknesses. Beginning with the patent to Walker granted in 1878, and ending with the patents to Smith of 1893 and 1894, is found a long series of attempts. Some of these are for "garment supporters" in which the devices in combination are employed for the analogous use of holding up skirts or dresses as well as stockings. The patent of 1887 to Cattile is for a clasp in which the loop member is of flexible wire, and of a form which when the button is inserted will by its yielding and recession hold the fabric firmly. Smith, the latest inventor, endeavored in his patent of 1894 to remedy the defect by employing a button of which the shank was made of springing uprights. The difficulty was not satisfactorily remedied until the substitution of the rubber button of the patent accomplished the desired result; and notwithstanding hose supporters, having all the essential features of the patented clasp except the rubber button, were open to public use, the patented supporter at once met with great commercial success, and users and dealers promptly recognized its merits.

It is necessary that the button or stud be provided with a firm shank, which may be proportioned to the lower narrow end of the loop member, so that the fabric of the hose, interposed between the two, may be gripped or clamped between the shank of the stud and the portion of the loop surrounding it. The button of the patent is provided with such a shank, and the first claim, which is the

one that was adjudged valid by the court below, is for a supporter having with the other parts "the button composed of the central support and the surrounding rubber portion." The patentee, however, states in his specification that he prefers that the entire head of the button shall be of rubber. He also states in the specification that when he uses the term "rubber" in the claims he intends to include as an equivalent "any other material adapted to prevent the button from slipping, and having characteristics similar to rubber and adapted to the same use." By this he means to mention as an equivalent any material "having a fibrous, yielding, or elastic surface to which the garment tends to cling," as he elsewhere points out in the specification. In a later patent granted to him for a garment supporter, an article for an analogous use, he refers to the patent in suit, and states that it covers the use of other material than rubber, "including fibrous materials," and points out that "felt, fiber, cloth, and leather" would supply a surface to the button which would impart the desired characteristics, and form a surface to the button of a "yielding or elastic material."

It seems obvious that the claim in controversy is not to be limited to a hose supporter the button shank of which is made of rubber or surrounded with a rubber surface, and that it includes one in which the shank is made of or surrounded with any fibrous or yielding material, and that a button made of or covered with felt, fiber, cloth, or leather would, when combined with the other parts, infringe the claim.

As the scope of the claim must be as broad as any structure which would infringe it, the consideration of its patentable novelty is narrowed to the single question whether it was invention to substitute in the old hose supporter, in lieu of the metal button, a button made of rubber, leather, felt, or any other fibrous or yielding material to which the fabric of the stocking would tend to cling.

On first impression it would seem to have been an obvious thing to select some kind of material for the button that would resist the tendency of a smooth button to slip, although firmly gripped, and yield sufficiently, while resisting the slipping, to obviate the abrasion of the fabric. It was common knowledge that rubber is neither as hard nor as unyielding as metal, bone, or pearl. It was also common knowledge that it has the property of clinging, and its use on shoes, stairway steps, and for mats and floor coverings are familiar instances illustrating its adaptability to prevent slipping. It had also been used for buttons in order that its elasticity would permit the button to yield easily to sudden pressure, and yet not abrade the fabric of the button hole, as in the instance of the collar stud of the Allen patent. But in none of its prior uses had it been employed as the member of a device between which and another member a portion of the fabric was to be clamped. The instances of the prior use of such a material do not necessarily suggest its adaptability to do the work required of a button in a hose or garment supporter more efficiently than one of metal. That its selection was not an obvious thing is persuasively and cogently shown by the fact that during many years numerous inventors were trying to remedy the defects in the old device, and it did not occur to them how simply and satis-

factorily this could be done by making the button of rubber or some other elastic or yielding material. Its employment in the device of the patent was a new use, and imparted to the device a remarkable efficiency, as compared with that of the best type of former devices. Without the aid of such an experimental demonstration as was made upon the argument it would be difficult to realize the practical value of the improvement.

We have not overlooked the prior patent showing a device having a pair of jaws faced with springy or elastic material, which are pressed against the intervening fabric to hold it between them, nor the prior patent for a supporter in which an ordinary button of pearl or bone or some hard material is stitched to its place by thread. These patents are of insignificant value as anticipatory references, or as suggesting the adaptability of the material for the new occasion of its use.

It is not necessary to the patentable novelty of a device, which consists in employing a new material for an old one in constructing one of its parts, that the substitution should involve the discovery or utilization of an unknown or unexpected property of the material. This is one of the tests of patentable novelty, but it is not the only one. Whether the feature of novelty is the employment of a new material, or a change of adaptation in other respects, the inquiry always is whether what was done involved the exercise of inventive faculty as distinguished from the ordinary skill of the calling. When the substitution has accomplished a result which those skilled in the art had long and vainly sought to effect, the evidence that it involved something beyond the skill of the calling is so persuasive that it generally resolves the inquiry in favor of patentable novelty. Applying that rule to the present case, we conclude that the patent in suit, as regards the claim in controversy, is not invalid for want of patentable novelty.

A careful examination of the evidence has satisfied us that the invention of Gorton antedated the English patent to Knight. His long delay in making application for the patent creates a strong countervailing presumption, but is reasonably and adequately explained by the surrounding facts and circumstances, and, thus explained, ought not to prevail against the very convincing evidence which has been adduced by the complainants. The Knight patent is evidence that one out of a host of inventors working upon the same problem conceived the practicability of the rubber button. It is not evidence that there was no inventive thought in the conception, and as it was a publication later than the invention of Gorton it is of no value as an anticipatory reference.

Upon the evidence in the record the defense of an abandonment of his invention by Gorton does not merit serious consideration. The decree is affirmed, with costs.