GEORGE FROST CO. et al. v. SAMSTAG et al.

(Circuit Court of Appeals, Second Circuit. July 19, 1910.)

No. 327.

1. PATENTS (§ 21*)—USE OF DIFFERENT MATERIAL—"INVENTION."
   The use of a different material in constructing an article previously patented involves invention where it produces a useful result, increased efficiency, or a decided saving in operation.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 23; Dec. Dig. § 21.*
   For other definitions, see Words and Phrases, vol. 4, pp. 3749-3754.]

2. PATENTS (§ 328*)—INFRINGEMENT—HOSE SUPPORTERS.
   Gorton patent, No. 552,470, for a hose supporter, in so far as it provided for a rubber button, involved patentable invention and covered a supporter having a shankless button of rubber or other clinging material.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit by the George Frost Company and another against Henry F. Samstag and others. From a decree of the Circuit Court for the Southern District of New York dismissing the bill on the ground that letters patent No. 552,470, for hose supporters, was not infringed ([C. C.] 173 Fed. 793), complainants appeal. Reversed.

W. K. Richardson and A. D. Salinger, for appellants.

Edmund Wetmore and George D. Seymour, for appellees.

Before WARD and NOYES, Circuit Judges, and HAND, District Judge.

WARD, Circuit Judge. This patent has been heretofore considered by this court and upheld as for an invention which made the first really practical garment supporter. The Circuit Court in Frost v. Cohn (C. C.) 112 Fed. 1009, and this court on appeal—119 Fed. 505, 56 C. C. A. 185—have held that Gorton's invention was the substitution in garment supporters of rubber or an equivalent material for the button in combination with the old metal pear-shaped loop in place of any other material previously used. Judge Coxe said:

"The crucial question is one of invention. It is argued by the defendants that Gorton's sole contribution to the art was the substitution of a rubber button for the metal buttons previously used, and that this was merely a change of material involving only mechanical skill. Conceding that the defendants' diagnosis of the issue is somewhat severe in lopping off the other members of the combination, nevertheless the court sees no way to escape the conclusion that the fate of the patent depends upon the effect of the introduction of the rubber button into the old structures. Did this involve invention? Assuming that the case involves a change of material and nothing more, how stands the law?"

---

In Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852, Mr. Justice Bradley states the rule as follows:

"The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained. Gorton's achievement is clearly within the exception and combines the three alternative essentials there stated. His supporter attains a new and useful result, an increase of efficiency and a saving in operation."

He referred to his decision in Union Hardware v. Selchow (C. C.) 112 Fed. 1006, handed down at the same time, in which invention was not found in substituting sheet steel for cast steel in trucks for roller skates. There can be no doubt as to what his opinion of Gorton's invention was.

Judge Wallace on appeal said:

"As the scope of the claim must be as broad as any structure which would infringe it, the consideration of its patentable novelty is narrowed to the single question whether it was invention to substitute in the old hose supporter, in lieu of the metal button, a button made of rubber, leather, felt, or any other fibrous or yielding material to which the fabric of the stocking would tend to cling.

"On first impression it would seem to have been an obvious thing to select some kind of material for the button that would resist the tendency of a smooth button to slip, although firmly gripped, and yield sufficiently, while resisting the slipping, to obviate the abrasion of the fabric. It was common knowledge that rubber is neither as hard nor as unyielding as metal, bone, or pearl. It was also common knowledge that it has the property of clinging, and its use on shoes, stairway steps, and for mats and floor coverings are familiar instances illustrating its adaptability to prevent slipping. It had also been used for buttons in order that its elasticity would permit the button to yield easily to sudden pressure, and yet not abrade the fabric of the buttonhole, as in the instance of the collar stud of the Allen patent. But in none of its prior uses had it been employed as the member of a device between which and another member a portion of the fabric was to be clamped. The instances of the prior use of such a material do not necessarily suggest its adaptability to do the work required of a button in a hose or garment supporter more efficiently than one of metal. That its selection was not an obvious thing is persuasively and cogently shown by the fact that during many years numerous inventors were trying to remedy the defects in the old device, and it did not occur to them how simply and satisfactorily this could be done by making the button of rubber or some other elastic or yielding material. Its employment in the device of the patent was a new one, and imparted to the device a remarkable efficiency, as compared with that of the best type of former devices. Without the aid of such an experimental demonstration as was made upon the argument, it would be difficult to realize the practical value of the improvement.

"We have not overlooked the prior patent showing a device having a pair of jaws faced with springy or elastic material, which are pressed against the intervening fabric to hold it between them, nor the prior patent for a supporter in which an ordinary button of pearl or bone or some hard material is stitched to its place by thread. These patents are of insignificant value as anticipatory references, or as suggesting the adaptability of the material for the new occasion of its use."

It is true that the court was only considering claim 1 of the patent in connection with a button having a rubber-covered shank.

"Claim 1. In a hose supporter, the combination of the webbing, the loop having an opening large at one end and narrower at the other, the button supporting plate, and the button composed of the central support and the surrounding rubber portion, substantially as set forth."

But the language used was applied to the invention, and was not confined to that or to any particular form of it. Counsel for the appellee felt the force of this, and met it by saying that the Circuit Court fell into an error. Their language is:

"This is conclusive on the point that the judge was mistaken in so far as he assumed that the device of the patent in suit was the first garment supporter to contain, as an element, a rubber button. But for this mistake of fact, contrary to the evidence, his decision would probably not have contained the statements as to the breadth and character of the invention in the paragraph beginning, 'Here was a situation,' as well as the paragraph immediately following. The mistake is not to be wondered at, considering the number of exhibits.

"But, whatever may have been the cause of this error, the fact remains that the initial decision on which all the litigation under the patent in suit has hung, contains a fundamental error of very far-reaching effect, namely, the supposition on the part of Judge Coxe that the invention of the patent in suit was the introduction of an element of rubber into a garment supporter."

We think the appellee overlooks the fact that Judge Coxe was not speaking of all garment supporters, but only of those in combination with the old metal pear-shaped loop.

*Fig. 9.*

The claims under consideration in this case are 2 and 4:

"Claim 2. In a hose supporter, the combination of the webbing, the loop having an opening large at one end and narrower at the other, and the rubber button, substantially as set forth."

"Claim 4. In a hose supporter, the combination of the webbing, the supporting plate attached thereto, the button or stud mounted thereon and having a flanged head of rubber, the loop also attached to the webbing and having an opening large at one end and narrower at another, substantially as and for the purpose set forth."

The appellee insists that the patent contemplated only buttons having a rubber-covered shank, and this was the view taken by the court below. But Fig. 9 shows that shankless buttons were also contemplated, and they were covered by claim 2.

It is said that this Fig. 9 should be eliminated from the patent. We know of no case authorizing the court to strike out of the specifications a figure inserted by the inventor. The button of this figure must be regarded as a rubber head. The defendants' button has a rubber head and operates exactly as does the button of Fig. 9 and reads on both claims 2 and 4.

*Fig. 4.*

The fact that it also has a bare metal shank in the form of a gooseneck does not take it out of the patent as heretofore construed by this court. The British patents to Knight and to Parry are disregarded as references. The former because subsequent to Gorton and the latter because not having the metal pear-shaped loop, which is an essential feature of the patented invention.

Decree reversed, with costs.