## PROTECTOR LAST RE-ENFORCING CO. v. JOHN PELL & SON, Inc.

### (District Court, D. New Jersey. April 5, 1913.)

**1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—REINFORCED LAST.**
The Baker patent, No. 870,760, for a reinforced last having a fiber-topped heel, with an under cushion of leather or other yielding material to enable the last to be used without injury during the heeling operation, was not anticipated, and discloses invention of a meritorious character; the device being one of great practical value. Also, *held* valid as against a claim that the patentee was not the real inventor, and infringed.

**2. PATENTS (§ 237*)—INVENTION—SUBSTITUTION OF MATERIAL.**
While as a general rule the substitution of one material for another does not involve invention, it may do so if some new and useful result is thereby attained.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 374, 375; Dec. Dig. § 237.*]

**3. PATENTS (§ 35*)—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.**
The success of a patented device, which met a general demand that many others had tried unsuccessfully to supply, is true indication of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

**4. PATENTS (§ 36*)—VALIDITY—EVIDENCE OF INVENTION BY OTHERS.**
Testimony that others than the patentee were the real inventors of the thing patented, adduced in an infringement suit to defeat the patent, should be of such dignity and weight as to satisfy the court beyond a reasonable doubt, or it should be unhesitatingly rejected.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. § 36.*]

In Equity. Suit by the Protector Last Re-enforcing Company against John Pell & Son, Incorporated. On final hearing. Decree for complainant.

George H. Maxwell, of Boston, Mass., for complainant.
W. Jay Ennisson, of New York City, for defendant.

CROSS, District Judge. The bill of complaint alleges that patent No. 870,760 for a re-enforced last, for boots and shoes, issued November 12, 1907, to Winthrop B. Baker, assignor to the complainant, and which is owned by it, is valid and has been infringed by the defendant. The bill prays for the customary relief. The defendant denies the validity of the patent, but asserts that if it is mistaken in that respect it nevertheless has not infringed it.

[1] The patent contains three claims, all of which are in issue; they are as follows:

"1. A wooden last for boots or shoes provided with a recess at the comb portion and with a protective cushioning plate fitted in said recess, said

cushioning plate comprising an outer layer of fibrous substantially incompressible material and an under layer of cushioning material, substantially as described.

"2. A protective comb plate for wooden lasts comprising an outer layer of fibrous substantially incompressible material and an under layer of cushioning material secured thereto and having its sides and rear end shaped to conform with the sides and rear of a last at the comb portion thereof, substantially as described.

"3. A last provided at its comb portion with a protective cushioning plate comprising an outer layer of fibrous substantially incompressible material and an under layer of cushioning material and means for attaching said protective plate to the comb of a last, substantially as described."

The character, nature, and object of the invention, as set out by the patentee in the specification of the patent, are in part as follows:

"My invention relates to improvements in lasts used in the manufacture of boots and shoes, and it has for its object to so construct and protect a wooden last that it can be used during the heeling operation.

"In the manufacture of boots and shoes, it is very desirable to be able to attach the heels thereto without removing therefrom the wooden last upon which the shoe has been lasted, and upon which it has been supported and shaped during the operation incident to its manufacture up to the heeling operation, and the consequent relasting of the shoe after the attaching of the heel causes a distortion of the upper and sole of the shoe, which is objectionable, and the labor incident to the withdrawal of the wooden last and the subsequent relasting adds to the cost of production. The result is that many attempts have been made to reinforce and strengthen the heel portion of wooden lasts so that they may be capable of withstanding the tremendous pressure incident to the attaching of the heel and the proper compression of the heel and toplift.

"It has been found impracticable to use the ordinary wooden last, for the reason that there is considerable play between the spindle of the jack of the heeling machine and the thimble of the last, and therefore the last is liable to tip while under compressive strains, thus producing torsional strains between the jack spindle and the last, which frequently splits the last at the heel portion. Furthermore, the metallic block which supports the spindle of the jack of the heeling machine cuts into the fibers of the wood and destroys the surface of the last in contact therewith.

"The object of the present invention, therefore, is to provide a pressure receiving cushioning protective plate to be secured to a wooden last at the comb portion thereof, and thus protect the last from splitting and from being injured by the block of the heeling machine."

Upon the question of the validity of the patent, the bill shows that certain specified patents in the prior art are claimed to anticipate it; prior use is also asserted, and the allegation made that Baker, the patentee, was not the real or sole inventor thereof, but that the idea of the alleged invention was suggested to him by three different persons, on as many different occasions, and that he appropriated it from them. These matters will hereafter be considered somewhat in detail, but it may as well be settled from the outset that if the patent is valid the defendant has infringed it. And this notwithstanding the claim made in behalf of the defendant that the alleged infringing devices, which by the way are perfect copies of the patented article, have not been brought home to the defendant. It may be admitted that a clearer case might have been made, but even so sufficient facts appear to make out, in the judgment of the court, a prima facie case. The defendant was thereby put upon its defense, which, however, it did not see fit to

make, but chose rather to stand upon the alleged insufficiency of the complainant's proofs. Of course, it had a perfect right to do this, and take its chances of winning out on that ground, but with the facts all pointing as they did in but one direction, and that towards the defendant, it was a hazardous course to pursue, so hazardous indeed as to warrant the suggestion that it had no defense to offer.

With regard to the prior art, it may be said of the "anvil heel type" of last, concerning which considerable testimony was taken, that the defendant admits it has no relevancy to the case; consequently no further attention will be paid to any of the patents of that type in evidence, unless they have been particularly referred to by defendant's counsel. Those, however, which counsel for defendant has referred to in his brief, and apparently relies upon, will now be considered in detail, and first among them is one issued to R. L. Campbell, No. 337,131, in 1886. This counsel admits lacks any underlying layer of cushioning material. Indeed, it may fairly be said to belong to the anvil type. It shows an iron plate to protect the cone of the last from the force and effect of the heeling blow. It in no wise suggests, must less does it embody, the device of the patent in suit.

The next was issued to one J. Elam, No. 667,204, in 1901. This again shows the cone protected, or attempted to be, by an iron plate so placed as to receive the blow of the heeling operation. This device is also of the anvil type; indeed, the inventors speak of the plate as an anvil; furthermore it is entirely apart from the idea disclosed by the patent in suit.

Another patent referred to was issued to one Davis, No. 770,048, in 1904. Speaking of this patent, defendant's counsel is content with merely saying that it "illustrates a layer of some material along the cone of the last there shown, but makes no reference to this plate in the specification." Notwithstanding the slight attention given this patent by counsel, it has been carefully examined without, however, discovering in it anything which could reasonably be said to anticipate the Baker patent. Defendant's counsel discovers a dotted line and imagines that it represents "a layer of some material" which perhaps was intended for use as a cushioning device. His conjecture may be correct; but since he admits that no reference to it can be found in the specification, it can hardly be regarded as instructive to those seeking the device of the patent in suit.

Next in order is a patent to Scott, No. 679,514, 1901, for a thimble for a shoe last. This patent shows a thimble having a flange extending over the cone of the last to which it is attached by screws. It is claimed also that underneath the plate referred to, as indicated in the drawing by a dotted line, is imposed some other plate which counsel claims is suggestive of the cushioning layer of the patent in suit; he, however, admits that no reference is made to it in the specification, hence whatever is claimed in respect to it is highly speculative, and must be ignored as it was in the consideration of the Davis patent.

But one other patent has been referred to, that of Turner & Cote, No. 300,414, issued in 1884, for a last. This patent shows a plate of iron slightly raised from the cone of the last so that, when it is pressed

upon by the block of the jack of the heeling machine, the plate will strike against the wood of the top of the heel of the last, and, it is claimed, deliver the blow over its entire surface. It would seem, however, that a blow delivered to a plate thus raised, however slightly, from the wood of the last, would possibly impart a more uneven and more destructive blow to the wood than it would if it rested, in the first instance, firmly against the cone of the last. Integral with this plate is a hollow shaft fitted into a hole in the last, at the foot of which is a cushion of leather upon which the end of the hollow shaft rests. This construction counsel claims is a cushioning device, but even so it does not foreshadow the combination of the Baker patent. Moreover, there is no evidence that the device is practicable; but, on the contrary, there is evidence that it is impracticable and has proved to be a failure. At all events, and admitting everything that can properly be claimed for it, it constitutes but a mere suggestion of a cushioning device in connection with an iron plate to which, however, it was not attached, and with which it was not in combination.

An important admission made by defendant's counsel will not be set forth. He says:

"It is noticeable that the patent art shown in the record beyond the peculiar form shown in the Turner & Cote patent does not contain patents with protective plates of hard material over a cushioning layer."

The admission thus frankly made was entirely warranted by the state of the art as disclosed in the record.

Certain testimony was introduced on the part of the defendant, with reference to the prior use of the noncushioning protective plates. But since such devices do not meet, and in no respect attempt to meet, the claims of the patent in suit, it is unnecessary to spend time in their consideration.

Notwithstanding the admission by defendant's counsel above referred to, concerning the patent prior art, he nevertheless claims that a prior use of a last, involving the principle of the Baker last, has been shown, and that such use was so long continued and has been so conclusively proven as to defeat the patent in suit. His argument in this respect is founded upon the testimony relating to a pair of lasts called the "Banister lasts," and known in the case as exhibits Nos. 41 and 42. The use referred to may, however, fairly be termed experimental. Mr. Lance, the foreman of the heeling and finishing department of the Banister factory, testified that he first saw those lasts "somewhere about 15 years ago," while another witness thinks that it is about 15 years since they ceased to have lasts made in that way in that factory; and Mr. Lance, after testifying that he had seen lasts fitted up similar to the exhibits just mentioned, was asked how long ago, and answered:

"Well, that's on some of our older lasts you know; we don't have them on any of our later lasts at all, only the leather part."

There is also evidence of experts in the case which shows that in their opinion these lasts were really old ones which had been repaired where the wood had broken away by substituting for the

broken wood layers of leather, whereupon the last was mounted for use substantially after the manner of the Denny patent No. 280,724 of 1883. Whether, however, the testimony just referred to is correct or not, is perhaps immaterial, since the lasts in question, whenever actually made, concerning which the testimony is most vague, are really of the anvil type; they have the iron plate above the cone, and a shank running through the last in contact with and resting upon, though not actually integral with, the heel plate. This fact appears not only from the testimony, but from an examination of the lasts themselves. Lasts thus constructed do not meet or narrow the construction of the claims of the Baker patent. A witness, McNeill, also testified to having seen lasts somewhat similar to the Banister lasts. His testimony, however, is not impressive, if for no other reason than that he appeared to yield too willingly to the suggestions of leading questions. But aside from that his testimony shows that the last he refers to was used experimentally and as one of many devices used and thrown aside in an endeavor to find a reliable one. This appears from the following question and answer:

"Q. Were the lasts having a metal plate on top of the leather in regular use in connection with the manufacture of shoes? A. Yes, they were put on so as to protect the last from breaking; we used that scheme once; we tried so many things to protect the tops of the lasts. * * * After years of trying, I have come to advise my customers to have nothing but two or three leathers, a tube, and a rivet."

Furthermore, the testimony of this witness is so general and indefinite as to fall far short of the character of testimony which the law demands in order to establish a prior use.

Again, it is contended on behalf of the defendant that no metal or other hard plate is necessary for the protection of the cone of the last; that a strip or two of leather nailed thereon are of themselves sufficient protection; that such a method of protection was very common and had been for many years; and that Baker himself admits that he had known of it for from 20 to 25 years. It is unnecessary, however, to take up time in answering this line of argument, since such a construction is obviously outside of the scope of the patent in suit. The defendant corporation is not complained of on any such ground, or because of any such use. Those who, with it, think that leather alone affords the best or even a sufficient form of last-protection, are at liberty to adopt and use it. A long line of similar argument, as that last makers in general prefer leather tops to fiber tops; that some makers after using fiber tops have changed back to leather tops; and that the leather top needs no plate, either of metal or fiber, but is better without—requires no further or special mention.

[2] Assuming that a use, other than experimental, of protectors formed of layers of metal and leather have been proved, it is further argued in behalf of the defendant that there is no novelty or invention involved in substituting for the metal plate a layer of fibrous substantially incompressible material, which the Baker patent calls for, and that such a substitution is a change of materials only.

It is true that the substitution of one material for another is ordinarily a mere matter of mechanical judgment, and does not involve invention, but while that, speaking generally, is so, it nevertheless does not fully state the rule given below, which has been followed ever since it was first promulgated by Mr. Justice Bradley, in Hicks v. Kelsey, 18 Wall. 670, 673 (21 L. Ed. 852). He there says:

"The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained."

As illustrative of what might be called exceptions to the general rule, see King v. Anderson (C. C.) 90 Fed. 500; George Frost Co. et al. v. Cohn et al., 119 Fed. 505, 56 C. C. A. 185; Hogan v. Westmoreland Specialty Co. et al. (C. C.) 163 Fed. 289; National Casket Co. v. Stoltz (C. C.) 153 Fed. 765; George Frost Co. v. Samstag et al., 180 Fed. 739, 105 C. C. A. 37. Patents having to do with the material of which the filaments in the bulbs of electric lighting lamps are composed are also illustrative.

As already appears, the Baker invention has to do with the nailing of heels to shoes by means of power machines. During this operation, a crushing blow is struck on the heel of the last, the effect of which is to split and break down, unless protected, the thin portion or cone of the last. This operation was so destructive to lasts that some manufacturers just before it was performed were accustomed to withdraw the wooden last and insert instead an iron one to receive the shock of the blow of the heeling machine. But to do this caused delay, and delay meant loss and expense; consequently they had to choose between one of two evils, either to have a very considerable portion of their lasts quickly destroyed, or else incur loss and expense in the direction above indicated. The evidence shows that multitudinous unsuccessful attempts covering a period of many years were made to solve the problem which Baker, according to the evidence, ultimately and successfully solved. Even the defendant recognized the value of his invention and became a licensee thereof, and so continued for a considerable period of time.

[3] As has already been shown, the prior art discloses no successful attempt to solve the problem which was solved by the patent in suit. That the invention in question is valuable, is attested by the large and increasing sales of the patented device. The success of the invention and the want which it met are true indications of invention. Several last-manufacturers have testified that they do not push the invention because it costs them more, some say about three times as much, to supply lasts with it, than it does to supply lasts with other protective devices; and yet, since their customers demand it, they are compelled to furnish it, notwithstanding their profits on the lasts are thereby materially lessened, since they get no more for them with the patented device attached, than with the other and cheaper devices.

Furthermore, several witnesses offered in defendant's behalf testify to the practical value of the device of the patent in suit. For instance, Mr. Belcher, a manufacturer of lasts, says that he regards the invention as of real practical value, and gives his reasons therefor. He also stated that he bought of the complainant, in 1907, 1,000 pairs of their lasts; in 1908, 1,400 pairs; 1909, 7,650 pairs; 1910, 17,465 pairs; and 1911, 21,837 pairs. Another of defendant's witnesses, an office manager of a large last manufacturing concern, testified that, while they had not pushed the Baker last, they had nevertheless sold of that make during the years 1909, 1910, and 1911, 99,650 pairs. Mr. Paine, a witness for the complainant, who was superintendent of the Regal Shoe Company for the past eight years, in answer to appropriate questions, said:

"In the Regal Shoe Factory we make a great many trial shoes. On these trial lasts we had some fiber tops. My attention was called to this by Mr. Morehouse, who asked me to try them out on the next order which we placed with him. This was done with such good results that we continued to order our lasts made with this top. All damaged lasts or lasts that were unfit to use again are brought to my office before being burned, that I can see just the condition they are in. I noticed that whenever a fiber or top last came in on the rack with the others, that the trouble was always in some other part of the last, rather than in the top. On the regular lasts, the top would always split out, become ragged, and tear the linings of the shoe. The only criticism we ever had (of the fiber top last) came from the cost-accounting department, who asked if I thought the lasts were worth the extra price. I told them that I thought they were worth the extra price and had no further criticism."

He also gives as his reason for regarding the fiber top lasts as a very much better and more durable last than the older forms, that there is a resiliency to the fiber and leather together which does not permit the cone of the last to be splintered as is the case of the wood top. There is other testimony on this line showing the practical advantage and usefulness of the invention. That it has great practical value over the other forms of last-protection shown in the case, appears beyond controversy. The gist of the invention seems to lie in the combination between the fiber and leather. An expert witness on behalf of the complainant, after giving the result of a somewhat remarkable test designed to show the relative efficiency and durability of this last as compared with lasts having other protective devices, says:

"I attribute this result to the fact of the cushion that the leather gives when the pressure is applied through the fiber top. The fiber in itself, in conjunction with this cushion of leather, distributes the pressure more evenly over the surface of the whole cone. With fiber directly on the wood, the pressure settles the wood down, but with the fiber on leather on the wood the pressure on the fiber will not settle the wood down appreciably. The fiber used in conjunction with the leather seems to have something in the nature of resiliency so that it gives something in the nature of hard rubber, only not quite so much so. The fiber, in itself, stays hard and keeps in shape, and yet it will give, because the leather under it permits it to. The fiber helps out the leather and the leather helps out the fiber. It is the combination of the two that makes the success of the fiber top."

In further explanation of what he meant by using the word "gives" in the above quotation, he said in substance that he did not mean that

it compresses, but that it yields without distorting itself; "that it never swages out sidewise so as to spread." The importance of this testimony lies in the fact that it appears in the case that iron or other metal plates dent and crack and swage, which necessarily impairs, in the first place, the efficiency of the protector itself, and sooner or later of the last. Before leaving this branch of the case, an extract from the testimony of another of complainant's experts will be given for the purpose of setting forth somewhat more at length, than has already been done, the advantages of the last-protector in question:

"This construction provides a last which can be kept in the shoe continuously until it is finally taken out after the shoe is substantially finished. The reinforcing plate constructed as set forth makes the upper heel portion of the last strong and durable to receive the very heavy thrusts and pressure of the heeling operation without being distorted or prematurely worn down, thereby effecting a great saving in labor by avoiding the necessity for removing the last, inserting an iron form for the heeling, and then reinserting the last. It is also an important improvement in that it avoids the distortion of the upper of the shoe which is inevitable in reinserting the last after it has been once removed before the shoe is finished.

"I consider the special form of protective cushioning plate set forth of special importance for effecting these advantageous results, for the reason that the hard, tough fiber employed for the outer portion unites the strength of metal with a shock-deadening, impact-absorbing property, thus serving effectively at the same time as a wear-resister and a jar-dampener. This is especially for the reason that there is a certain amount of give and flexibility to the fiber. No matter how small the jack block may be, the built-up protective top spreads the pressure over a considerable area, i. e., substantially the entire top of the comb or ankle portion of the last, while eliminating and practically entirely avoiding the hammering and swaging blows and thrusts which would otherwise be delivered upon the underneath material of the last. By reason of this, and of the relatively large size of the plate, the pressure cannot be localized to have a destructive effect on any particular spot at any time.

"By reason of the co-operative relation between the underneath layer, illustrated as leather, with the hard fiber of the top, a certain amount of self-adjustment and relative give for proper seating is possible, both between the hard fiber top plate and the wood of the last and between the fiber top plate and the supporting jack block, whereby the wood of the last is protected from bruising and splintering, and at the same time destructive action upon the fiber top is minimized. This co-operative relation between the special fiber top and the underneath cushioning layer further results in reducing and deadening the thrusts upon the cushioning layer which, were it directly engaged by a metallic surface, would result in its early destruction, as the hammering is too severe to be withstood by a substance such as leather, or any other material known to me which has the requisite yielding property.

"This fiber top construction is further important in that it permits a slight yielding, and an effective shock-deadening effect lengthwise of the last whereby the wood is protected from transverse thrusts and especially twisting angular thrusts which always occur to a greater or less extent upon the supporting jack post. This results from the fact that such thrusts imparted from the wood of the last to the protective plate edgewise thereof are transmitted through a considerable extent of the stock of the fiber to the central jack pin, and this affords a sufficient yield and shock-dampening property of itself without the interposition of a separate cushioning pad in this direction. The hard, tough nature of the fiber causes the plate to transmit these lateral edgewise thrusts to the supporting jack pin without distortion or mutilation of the plate and results in a relatively long period of usefulness for the last, without any material enlargement of the central jack pin receiving hole in the plate, and hence preventing any distortion and spreading of the comb or ankle portion of the last."

Other evidence of like character might be quoted, but to avoid undue prolixity it will not be done, and indeed the testimony already quoted or referred to is so reasonable and commends itself so strongly to one's judgment, as not to require cumulative support.

There is one other matter about which a great ado was made at the argument, and concerning which much testimony, and as it seems to the court unnecessary testimony, was taken.   Indeed, it might be said to be a feature of this case that every little matter has been unduly magnified, apparently in furtherance of a remarkably determined effort to break down the patent in suit.   The point referred to, as stated by defendant's own counsel, is that the invention is not that of Baker, or at least that he was not the sole inventor thereof.   In support of this proposition, three witnesses have testified that Baker, before he filed his application for the patent in suit, showed them, not all together, but when apart from each other, a last-protector consisting of a layer of fiber, without the layer of leather underneath the layer of fiber, and that they suggested to him the advantage of the latter construction. None of these witnesses, however, had the courage openly to claim that he was the inventor of the device as patented.   Baker absolutely denies their statements.   Furthermore, their testimony as to time, place, and circumstance is exceedingly indefinite.   Again, it is a rather remarkable circumstance that these men, or the concerns with which they have been connected, have bought lasts made under the Baker patent, for the intervening period of four or five years, without protest that Baker was not the inventor, and without claim that either of them was its inventor, or that either of them was in any wise or to any extent connected with its invention.

[4] Testimony of the character under consideration, adduced for the purpose of defeating a patent, should be of such dignity and weight as to satisfy a court beyond any reasonable doubt of its accuracy, or else it should be unhesitatingly rejected.   Were the rule otherwise, no patent would be safe against an insidious assault of this character. The attempt made to reinforce the evidence referred to by certain outside correspondence is ineffective for that purpose.   It is obviously open to too many interpretations, other than that put upon it by defendant's counsel.

However, in further answer to the claim of said witnesses to be the inventors in whole or in part, of the patent in suit, the complainant has introduced much evidence intended to show that the invention in question was made some months prior to the time when the alleged suggestions were severally made to Baker, the patentee.   It is not deemed necessary, however, to consider this evidence, as I am thoroughly convinced that the testimony of the three witnesses above referred to, and any other matters incidental thereto, ought not, for reasons already given, to be deemed sufficient to destroy this patent.

Finally it appears that prior to the time of filing the application for the patent in suit, Baker filed an application for a last-protector consisting merely of the fiber layer without the cushioning layer of leather. This application he failed to prosecute, and it is claimed on behalf of the defendant that he thereby abandoned whatever invention was embodied in that application, and that it is now open to the public.

The failure to prosecute an application is not, however, necessarily an abandonment of the invention; furthermore, the abandonment of the application for a patent for the fiber layer only, did not effect either the grant or validity of the patent in suit for a combination of fiber and leather, the application for which was filed but four or five months after the alleged abandoned application was filed.

A decree in favor of the complainant will be entered in the usual form, with costs.