26 C.C.P.A. (Patents)

**In re MITCHEL et al.**

**Patent Appeal No. 4051.**

Court of Customs and Patent Appeals.
April 10, 1939.

Fred H. Miller, of Los Angeles, Cal., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner which had the effect of denying all the claims (numbered 1 to 16, inclusive, 20 and 21) of an application for patent for a combined churn and butter worker, obviously designed for use in plants where butter is produced in large quantities.

The brief filed here by the Solicitor for the Patent Office succinctly states the issues of the case as follows: "This appeal * * * involves a question of division among three sets of claims specific to three different species of the alleged invention where no generic claim has been found allowable and also involves the question of patentability over the prior art of the generic claims and also the claims to one of the species of the alleged invention."

It is agreed that if any generic claim be found allowable then all three sets of the specific claims may be considered in this application without requiring division.

On the other hand, if no generic claim be found allowable it is agreed that the requirement for division was correct.

Appellants' structure is a combined churn and butter worker. In operation the cream is introduced into a container composed of certain cast metal, or metals, hereinafter described and churned by agitating the container. Thereafter the separated granules of butter are worked while remaining in the container, the working operation being separate and distinct from the churning operation.

We understand combined churns and butter working devices having wooden containers are old in the art. Appellants' specification so teaches, it being there said that: "It has been the practice to make combined churns and butter workers with wooden walls for the reason that butter will not stick to wood under the conditions in which the cream is churned or the butter is worked in the apparatus." Appellants have no claims relating to the operative or mechanical features of their structure. The question of substitution of material is the primary question in this case.

Appellants stress what may be designated as the "porosity property" of the cast metals used by them. They claim to have discovered that cast aluminum, cast tin, and cast metals composed of these, or of these and their alloys, contain cells in which water collects during the churning and butter working processes in a manner which creates a film upon the surface of the interior walls that prevents the butter granules from adhering to the walls. This is claimed as an important and valuable discovery and such discovery, embodied in appellants' apparatus, it is contended, constitutes invention.

Coming now to the claims (and before quoting any) it may be said that numbers 1, 2, and 13 are the broadest in scope. These are broad enough to cover structure, comprising faces of the container chamber made of any cast metal which by its nature is "incapable, under normal conditions, of affecting the flavor of butter."

In claims 3, 5, 7, 9, and 11, the metal specified is cast aluminum.

In claim 4, the metal specified is cast tin.

Claims 6, 8, 10, 12, 14, 15, and 16 specify cast alloy of aluminum. In the specification and in some of the claims magnesium and silicon are named as alloy materials.

Claim 20 defines the cast metal as being from the group consisting of aluminum and tin, and claim 21 defines it as "being from the group consisting of aluminum, tin and their alloys."

Each of the claims specifies that the metals are "cast" and this is a feature which was greatly stressed before us.

It appears from the decisions below that claims 1, 2, 13, 20, and 21 were treated as generic claims and the others were held to comprise three distinct species, claims 3, 5, 7, 9, and 11 being limited to cast aluminum, claim 4 to cast tin, and claims 6, 8, 10, 12, 14, 15, and 16 to aluminum alloys.

As representative of the various groups, we quote claims 1, 3, 4, 6, 20, and 21:

"1. A combined churn and butter worker comprising faces made of cast metal incapable, under normal conditions, of affecting the flavor of butter."

"3. A combined churn and butter worker comprising faces made of cast aluminum.

"4. A combined churn and butter worker comprising faces made of cast tin."

"6. A combined churn and butter worker comprising a container adapted to receive cream to be churned into butter, means for agitating the container, the interior faces of the container being made of cast alloy of aluminum containing approximately two per cent magnesium."

"20. A combined churn and butter worker comprising a container adapted to receive cream to be churned into butter, the interior faces of the container being made of cast metal incapable, under normal conditions, of affecting the flavor of butter, said metal being from the group consisting of aluminum and tin.

"21. A combined churn and butter worker comprising a container adapted to receive cream to be churned into butter, the interior faces of the container being made of cast metal incapable, under normal conditions, of affecting the flavor of butter, said metal being from the group consisting of aluminum, tin and their alloys."

The references (disregarding one patent cited by the examiner but overruled by the board because appellants' filing date was held to have overcome it) are:

Bradford (Br.) 19,092, August 10, 1895.

Buaas (Danish), 39,554, December 3, 1928.

Longfellow et al., 1,122,960, December 29, 1914.

"Materials of Construction" by Mills, second edition, published in 1922 by John Wiley and Sons, Inc., New York, N. Y., pages 6–30;

Hunziker, "The Butter Industry," La-Grange, Ill., by the author, 1927, 2nd Edition, pages 43, 48, 50, and 52.

The British patent to Bradford constitutes the primary reference. It relates to a churn having an interior surface made of "a low grade or coarse grained porous quality of soft cast iron." The specification elaborates upon the advantages, stating, with reasons assigned, that such surface "prevents the butter granules contacting therewith or impelled thereagainst from sticking thereto."

The Danish patent relates to a "Churning Cask With Metal Bottom and Wooden Staves." It teaches making the bottom end of the cask of cast iron for purposes of strength, and · covering such bottom internally "with wood or a metal alloy which offers a small adhesion for the butter." It states that such metal covering material "may be aluminum, tin, enamel, or the like."

The patent to Longfellow et al. relates to a butter cutting machine having a receptacle in which the butter, after the process of production is completed, is placed for the purpose of being cut to the desired forms. It is said that the receptacle "is preferably cast of aluminum," and that "The aluminum box will not rust or warp out of shape and may be kept perfectly sanitary * * *."

The Mills publication states that aluminum may be used for casting purposes where lightness and softness are required rather than hardness and strength. There is nothing in this publication which relates or refers in any way to the butter making industry.

The matter quoted from the publication entitled "The Butter Industry" discusses the effect of wood and of various metal materials upon butter. Among other things it is stated: " * * * wood has no equal for equipment used in the handling of butter, such as churns and packing equipment. Its low heat conductivity and its porosity here are essential properties needed to prevent sticking of the butter to the surfaces.

Metal churns and glass-lined churns have proved unsatisfactory in this respect."

Various metals are named and discussed, but where used such use has not been in churns or butter working devices but in other vessels used in the milk industry. Of aluminum it is said: "Aluminum has not proved satisfactory when used in large creamery equipment. Its chief drawback has been that it yields to profuse pitting. This is believed to be due largely to the impurities of cast aluminum such as · has been largely used in this country. Corrosion is further intensified by the use of alkalies in washwater. In European countries, where drawn aluminum has been more readily available, aluminum equipment appears to have given better satisfaction. On the European continent particularly, aluminum has found extensive use in the construction of milk shipping cans, while in this country its adoption in the dairy industry has been confined largely to milk pails for machine milking, for which purpose it appears to be well suited."

There were three separate decisions of the board, two of them being in response to successive petitions for reconsideration.

The generic claims obviously should be considered first. The broader of those claims, 1, 2, and 13, were rejected by the examiner on Bradford alone. The specification of the patent was reviewed at some length, attention being directed to its teaching that the porosity of the cast iron used had the effect of causing an accumulation of water in the cells of the metal which prevented the butter granules from sticking to the walls. He held that the only feature of claims 1, 2, and 13 not disclosed in the Bradford patent was "the use of a metal in the casting which does not affect the flavor of butter," and, in effect, held the phrase of the claims, "incapable, under normal conditions, of affecting the flavor of butter" to be a mere functional statement. He applied the same reasoning to claims 20 and 21 which he rejected on · Bradford alone, and also "on Bradford in view of the Danish patent." The holding was; in effect, that there would be no invention in substituting aluminum or tin in place of the cast iron of Bradford, if desired, and "it particularly would not amount to invention to do this in view of the Danish patent."

As we understand the examiner's decision, had there been no references other than the Bradford patent he would have

rejected all the generic claims upon it. Whether the board fully shared this view is not altogether clear to us. While it pointed out the different groups, its discussion on the merits really covered together the generic claims and the specific claims of group 1, limited to cast aluminum. In its first decision it was said: "It is our view that there is no invention involved in substituting cast aluminum, tin, or their alloys for the cast iron used in the Bradford patent. Any one having the auxiliary references before him would have sufficient teaching to make this substitution in Bradford."

This would seem to indicate that in the absence of the teaching of the other cited art, the board would not have rejected the generic claims on Bradford alone. It seems certain that they would not have been rejected on the other art cited had the Bradford reference not been in the case.

However this may be, the board did hold that no generic claim was allowable, denied claims 3, 5, 7, 9, and 11, the first specific group, and sustained the requirement for division as to the other two species.

■ With respect to broad generic claims 1, 2, and 13, which cover all cast metal whose nature renders it "incapable, under normal conditions, of affecting the flavor of butter," we agree with the conclusion reached below, but we are of the opinion that the narrower generic claims, 20 and 21, stand upon a different basis.

These claims, taken together, limit the cast metal to metal from the group consisting of aluminum, tin, and their alloys. Appellants' specification discloses extensive experimentation with many metals, more than fifty varieties having different surface finishes, that is being cast, rolled, plated, sand blasted, etc., being named. After recounting the making of the experiments, the specification states: "Our invention consists in the discovery that cast metal and cast metal alloys have this property of forming a tenacious film of water and we have selected those metals that do not affect the flavor of butter and we have found of all metals that only two and their alloys are suitable, to wit: aluminum and tin, and such metals we use in churns or combined churn and butter workers and other apparatus used for the working or molding of butter."

The claims here are for a combined churn and butter worker.

■ The Bradford patent is limited in its specification and claim to the single metal, soft cast iron, and, so far as its terms are concerned, is for a churn only. A careful reading of the specification fails to disclose any teaching that the Bradford churn is a suitable apparatus in which to work the butter after the churning operation is completed. In view of the teaching of the art that wooden devices were used in both processes we agree that the mere combining of those functions in appellants' device does not lend patentability to the claims but, in our opinion, it is proper to consider the duplex character of the device, in connection with the question of substitution of material, for a reason stressed by appellants; viz., the requirement, as taught by their specification, of the introduction of salt into the butter while it is being worked. It may well be that the Bradford cast iron device is perfectly fitted to serve in the churning operation but wholly unsuited for·the working operation which requires the use of salt. Indeed, one of the metals listed among appellants' experiments as being tried is cast iron, and it is recited that butter, when that metal was used in the working, was given a metallic taste and that the metal was tarnished. There is no teaching in the Bradford patent that salt practicably may be used in the cast iron device.

We do not, of course, overlook the Danish patent. The primary object there sought by the patentee, it seems to us, was that of adding strength to the churning cask. This was said to be obtained by making the bottom of two or more materials, for example, a cast iron bottom externally, such bottom to be covered with wood or a metal alloy, aluminum and tin being named as suitable metal covering materials. No particular kinds of aluminum and tin are specified, and, like the Bradford patent, the Danish patent has no teaching of a double use of the cask. The specification indicates that the metal like the wood offers a small adhesion for the butter but teaches nothing as to what might happen if it be used in the butter working process where salt is introduced.

■ So far as the other references are concerned, we do not look upon either the Longfellow et al. patent or the "Materials of Construction" publication as having any particular relevancy here. As for "The Butter Industry" publication, that appears, in fact, to be favorable to appellants. The

clear teaching of that article which seems to have been published (2nd Edition) in 1927 seems to us to be that neither cast aluminum nor cast tin were then known to be available for equipment such as that here involved, either in this country or in Europe. Appellants subsequently (their application at issue was filed July 23, 1934) by a series of experiments demonstrated that cast aluminum and cast tin could be used successfully. Affidavits of disinterested parties were introduced into the record showing that the butter producing industry had sought an improvement over the churns and butter working devices being used (there is no showing of any actual use of any metal devices prior to that of appellants), and that appellants' apparatus met this desire. These affidavits do not establish invention, of course, but they do establish facts which legitimately may be considered in answering the inquiry whether appellants' substitution of material in the manner described was inventive.

It has not been suggested that it did not constitute invention to substitute appellants' metal devices for wooden devices even though the general function of devices made of both those materials is the same.

■ Questions relating to substitution of materials almost always present difficulties. It is not regarded as inventive merely to substitute one material for another, even though the substituted material may be superior to the old, but it is said in Walker on Patents, Deller's Edition, § 29, p. 182: "* * * where the excellence of the material substituted could not be known beforehand, and where practice shows its superiority to consist not only in greater cheapness and greater durability, but also in more efficient action, the substitution of a superior for an inferior material amounts to invention."

To the same effect is Robinson on Patents, Vol. 1, pp. 329, 334.

Based upon this principle many patents have been granted and sustained by the courts. General Electric Co. v. Hoskins Mfg. Co., 7 Cir., 224 F. 464; George Frost Co. v. Samstag, 2 Cir., 180 F. 739; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952; Fairbanks Wood Rim Co. v. Moore, C.C., 78 F. 490; Badische Anilin & Soda Fabrik v. Kalle et al., C.C., 94 F. 163; C. & A. Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Wickelman v. A. B. Dick Co., 2 Cir., 88 F. 264; Edison Electric Light Co. v. United States Electric Lighting Co., 2 Cir., 52 F. 300; Celluloid Manuf'g. Co. v. American Zylonite Co. et al., C.C., 35 F. 301; King v. Anderson, C.C., 90 F. 500.

■ It seems to us that, under the authorities cited, the test to be applied here is whether to one skilled in the art it would have been obvious, from the prior teachings, to substitute the cast metals of appellants (which substitution clearly appears to have wrought a great improvement in most or all of the respects stated by Walker, supra) for the cast iron of Bradford, and it is our conclusion that there is no sufficient showing in the references to justify a holding that it would be obvious.

Hence, we hold that generic claims 20 and 21 should be allowed.

It logically follows from this holding that all the species groups may properly be included in this application under present rule 41 of the Patent Office, but since specific groups 2 and 3 have not been considered on the merits it is proper that the case be remanded for their consideration.

The decision of the board is affirmed as to generic claims 1, 2, and 13, but reversed as to generic claims 20 and 21 and as to species claims 3, 5, 7, 9, and 11, and the case is remanded to the Patent Office for further proceedings consistent with this decision.

Modified and remanded.